**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

ELHANNON LLC, ELHANNON            :
WHOLESALE NURSERIES, LLC, and     :
ELHANNON WHOLESALE NURSERIES,     :
INC.,                             :
                                  :
          Plaintiffs,             :
                                  :   Case No. 2:14-cv-262
     v.                           :
                                  :
THE F.A. BARTLETT TREE EXPERT     :
COMPANY,                          :
                                  :
          Defendant.              :

## Opinion and Order

Plaintiff Elhannon Wholesale Nurseries, Inc. as successor to Plaintiff Elhannon Wholesale Nurseries LLC, as successor, in turn, to Plaintiff Elhannon LLC (collectively "Elhannon") brought this suit against Defendant F.A. Bartlett Tree Expert Company ("Bartlett"). Elhannon's Complaint, ECF No. 1, contains eight claims: (I) Breach of Contract, (II) Breach of Implied Covenant of Good Faith and Fair Dealing, (III) Negligence, (IV) Negligent Misrepresentation, (V) Intentional Misrepresentation/Fraud, (VI) Fraud in the Performance, (VII) Violation of New York's General Business Law, and (VIII) Punitive/Exemplary/Multiple Damages. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Bartlett moves to dismiss all but the breach of contract claim contained in Count I. ECF No. 10.

For the reasons set forth below, Bartlett's motion is **granted in part and denied in part**.  Counts II, VI, and VIII are dismissed **without prejudice**.  The Court grants Elhannon leave to amend its Complaint within **30 days** of this Order.

### I.    Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court evaluating a motion to dismiss must accept the facts alleged in the complaint as true and draw all reasonable inferences from those facts in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  This assumption of truth does not apply to legal conclusions. *Davis v. Vermont Dep't of Corrections*, 868 F. Supp. 2d 313, 321 (D. Vt. 2012).  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citation omitted).

### II.  Factual Background

The Court's description of the factual background accepts all facts alleged by Elhannon's Complaint as true, as it must at

this stage of the proceedings.  According to the Complaint,
Elhannon is a wholesale tree-growing and selling operation with
several locations and offices in the state of New York.  ECF No.
1 ¶ 1.  It sells trees across the United States to private
homeowners, developers, commercial entities, governmental
entities, architects, landscapers, and others.  *Id.* ¶ 2.
Bartlett is a Connecticut corporation with offices in Manchester
Center, Vermont.  According to Elhannon, Bartlett holds itself
out as the world's leading tree care company for both
residential and commercial clients.  *Id.* ¶ 3.

The parties first entered into a contractual relationship
in 2007 when Bartlett agreed to provide an "Integrated Pest
Management" ("IPM") program for Elhannon at each of Elhannon's
six nursery locations.  *Id.* ¶ 10.  That contract and subsequent
contracts committed Bartlett to inspect and treat all of
Elhannon's trees as part of a thorough plant healthcare program
that Bartlett calls its "MoniTor" program.  *Id.* ¶ 12.  Elhannon
selected Bartlett to provide its tree care service because of
Bartlett's national reputation and the protection and assurance
that Bartlett's name and reputation provided.  *Id.* ¶ 17.

At a meeting at Elhannon's offices in Petersburg, New York
in November of 2007, Jeromy Gardner of Bartlett's Manchester,
Vermont office made a presentation to Elhannon designed to
convince Elhannon to engage Bartlett to provide an IPM program.

3

*Id.* ¶ 18.  Mr. Gardner outlined a program that would take care of all disease and pests at all six Elhannon locations, encompassing approximately eight hundred and fifty acres. Bartlett would inspect the nursery, analyze the results, and develop and implement an integrated, comprehensive pesticide, disease, and fertilizer program.  *Id.* ¶ 19.  Elhannon agreed that Bartlett was to have complete control and was to be paid per treatment, or "mobilization."  *Id.*  The mobilization timeframe was under Bartlett's complete discretion and any work needed per mobilization was to be performed by Bartlett without limitation.  *Id.*  The proposal Mr. Gardner sent to Elhannon stated that Bartlett would collect soil samples from all of Elhannon's nursery locations, implement an IPM program, and inspect and treat all trees.  *Id.* ¶ 25.  Elhannon relied on Bartlett's experience and expertise in tree care and did not attempt to direct, guide, or limit the proposal or Bartlett's activities in any way.  *Id.* ¶ 27.  Elhannon assumed and expected that the contract encompassed whatever needed to be done and that Bartlett would in fact do whatever needed to be done.  *Id.* ¶ 29.

Elhannon subsequently entered into a series of contracts identical or similar to the first contract through 2013, all of which were drafted by Bartlett.  *Id.* ¶ 34.  Elhannon paid the fees demanded with each contract except for the July 2013

4

contract because it was an "exercise in complete futility" and "Mr. Gardner knew that it was an exercise in futility and was performed for 'show' only." *Id.* ¶ 35.  Elhannon contends that over the years Bartlett not only consistently failed to perform but it failed in almost every respect to meet the commitments made in its "Mission Statement," including failing to care for Elhannon's trees, to act with "full honesty, integrity, and fairness," to be "dependable," and to "communicate openly" with Elhannon.  *Id.* ¶ 36.  Elhannon also contends that Bartlett never had any intention to provide a quality IPM program and took deliberate steps over a period of years to conceal its true intentions, for example by promising when issues arose that it had everything under control and would take care of the problems reported.  *Id.* ¶ 37.

Elhannon claims that despite their seven-year relationship and the terms of all of the parties' contracts, Bartlett never performed a comprehensive inspection of all Elhannon locations, never treated all trees or anything beyond a small fraction, and never instituted an IPM program.  *Id.* ¶ 38.  Bartlett relied on a spraying technician, Jason Graham, rather than an arborist to inspect the trees on the same days he was scheduled to do his limited sprayings.  *Id.* ¶ 39.  Elhannon claims that this was not the bona fide inspection program called for in the contracts. *Id.*

From 2008 to 2010 Elhannon did not attempt to verify that Bartlett was fulfilling its duties under the contracts and assumed that Bartlett was indeed performing its inspections and executing a spraying program as needed. *Id.* ¶ 40. In 2010, Elhannon representatives noticed scale and larvae on its trees. *Id.* ¶ 41. Mr. Gardner said he would take care of the problem himself but he did not show up and Mr. Graham was left on his own. *Id.* ¶¶ 42-43. Mr. Gardner claimed he was ill at the time and when the parties met in 2011 to discuss the 2012 contract, Mr. Gardner promised to revise the program and do anything necessary to correct deficiencies caused by his absence during the 2011 season. *Id.* ¶¶ 44-46. Mr. Gardner continued to fail to correct the problems and they simply became worse over time as insect and disease issues had become visible and widespread throughout the entire nursery, costing Elhannon sales and damaging its reputation. *Id.* ¶¶ 48-50.

Mr. Gardner continued to promise to address the problems in various ways and consistently failed to do so. *Id.* ¶¶ 51-59. For example, Bartlett promised that it would spray the entire nursery but Mr. Graham covered only a small portion of two of the six nurseries. *Id.* ¶¶ 54-55. Mr. Graham allegedly falsely stated that he was spraying only one side of the trees because the chemicals would "walk." *Id.* ¶ 57. Mr. Graham also stated that Mr. Gardner had limited him to only two days of spraying

6

and that he was unable therefore to come back again to complete the job.  *Id.* ¶ 58.

Elhannon claims that Mr. Gardner used a chemical in September of 2013 that is banned in New York "in a desperate effort to address the exploding pest problem."  *Id.* ¶ 60.  The specific chemical is not identified in the Complaint.  Moreover, Elhannon alleges that Mr. Gardner was not licensed to spray in New York and there was no paperwork to document the New York sprayings he performed.  *Id.*  According to Elhannon, Bartlett then allegedly falsified records in order to hide the illegal spraying.  *Id.* ¶ 68.

Elhannon also claims that Bartlett falsified spraying records to indicate that Elhannon's entire nursery was sprayed on given dates even though it was not and that Bartlett's employees falsely reported the application of pesticides.  *Id.* ¶¶ 65-66.  Moreover, Bartlett improperly billed Elhannon for work done for other Bartlett clients.  *Id.* ¶ 67.  That Bartlett never intended to perform the contract as promised, according to Elhannon, is further demonstrated by Bartlett's failure to bring equipment necessary to use horticultural oil as a means of pest control as called for in the contracts between the parties.  *Id.* ¶ 69.  Mr. Graham, who is no longer employed at Bartlett, told Elhannon's owner, Jim Sutton that the program for Elhannon was never an IPM program.

The contracts between the parties contained an arbitration clause.  Elhannon claims that Bartlett refused to negotiate, arbitrate, or mediate when counsel for Elhannon contacted Bartlett.

Finally, Elhannon claims that it had to destroy trees as a result of Bartlett's failures and its net loss from pest infestations alone exceeds $8 million.  *Id.* ¶ 75.  However, the full extent of Elhannon damages is still unknown and could be several million dollars more.

In its motion Bartlett acknowledges a "*bona fide* contractual dispute with the Plaintiffs" and argues that the parties' disagreement arises solely out of their contractual relationship.  ECF No. 10-1 at 8.  Bartlett also alleges that its performance under the contracts was more than satisfactory.

## III. Discussion

### A. Choice of Law

Jurisdiction in this case is based on diversity of the parties.  "It is well established that federal courts determine governing law in diversity actions by looking to choice of law principles in the forum state."  *Evergreen Bank, N.A. v. Sullivan*, 980 F. Supp. 747, 750 (D. Vt. 1997).  When contractual parties have not specified the state law to be applied in a given case, Vermont uses the test laid out in Restatement (Second) Conflict of Laws § 188 (the "Restatement") to determine

which state has the most significant relationship to the transaction and the parties.  *Id.; see also McKinnon v. F.H. Morgan & Co.*, 750 A.2d 1026, 1028 (Vt. 2000) ("This Court has adopted the Restatement (Second) of Conflicts for choice-of-law questions in both tort and contract cases.").  The Restatement considers five factors in determining the law applicable including: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation, and place of business to the parties.  Restatement (Second) Conflict of Laws § 188.

Bartlett argues that the Court should apply New York law because it has the most significant contacts with the case. Every factor but the fifth factor weighs in favor of applying New York law: the contracts were negotiated in New York, the contracts called for performance at Elhannon's nurseries in New York, the contracts were performed at that location, and the subject matter of the contracts (the trees in the nurseries) were located in New York.  Two of the Plaintiffs are New York Corporations and all three have offices in New York.  While, on the other hand, Bartlett is a Connecticut Corporation with an office in Vermont, the Court is persuaded that the balance of the factors weighs heavily in New York's favor, especially since

Bartlett, the only party not domiciled in New York, is not objecting to the application of New York law.  Elhannon does not argue that the law of some other state should apply and appears to agree that New York law is appropriate since it brought a claim under the New York General Business Law.

Accordingly, the Court will apply New York law in evaluating this motion.

### B. Count II - Breach of Implied Covenant of Good Faith and Fair Dealing

Bartlett first argues that Elhannon's claim for breach of the implied covenant of good faith and fair dealing is duplicative of its breach of contract claim.  The covenant is read into every contract under New York law but it is not distinct from the contract itself.  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 205 (S.D.N.Y. 2011).  As a general rule, therefore, "the cause of action alleging breach of the implied covenant is duplicative of a cause of action alleging breach of contract."  *Id.* (quoting *Page Mill Asset Mgmt v. Credit Suisse First Boston Corp.*, No. 98 Civ. 6907(MBM), 2000 WL 35557, at *8 (S.D.N.Y. March 30, 2000)).  New York law "does not recognize a separate claim for breach of the implied duty of good faith and fair dealing based on the same facts as a claim for breach of contract."  *DiCroce v. Wells Fargo Bank, N.A.*, No. 13-CV-1768 (SLT)(RLM), 2014 WL 4904458, at

*8 (E.D.N.Y. Sept. 30, 2014) (internal quotation omitted).  A good faith claim will be dismissed as redundant if it merely pleads that the defendant did not act in good faith in performing its contractual obligations.  *MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 612 (N.Y. Sup. Ct. 2010).  A claim can be maintained in conjunction with a breach of contract claim "only if the damages sought by the plaintiff[s] for breach of the implied covenant are not intrinsically tied to the damages allegedly resulting from breach of contract."  *Ellington Credit Fund,* 837 F. Supp. 2d at 205 (internal quotation omitted).

The Court acknowledges that there may be circumstances that permit a plaintiff to maintain claims for both breach of contract and breach of the implied covenant of good faith and fair dealing.  This is not a case, however, in which Bartlett "exercise[d] a contractual right as part of a scheme to realize gains that the contract implicitly denies or to deprive the other party of the fruit (or benefit) of its bargain."  *Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*, 949 N.Y.S.2d 115, 118 (N.Y. App. Div. 2012) (internal citation omitted).  Nor is this a case involving an additional agreement with a third party.  *Research Found. of State Univ. of New York v. Nektar Therapeutics*, No. 1:09-CV-1292 GLS/CFH, 2013 WL 2145652, at *8 (N.D.N.Y. May 15, 2013).

11

Here, Elhannon's claim for breach of the implied covenant is essentially identical to its claim for breach of contract. The paragraph describing the actions constituting Bartlett's breaches states:

> Specifically, Bartlett breached the contracts by: not inspecting; not diagnosing; not treating; not providing a "thorough plant health care program"; not providing a "MoniTor" program; intentionally or negligently underspraying, or not fully, adequately, sufficiently, and/or efficaciously spraying; and not providing an IPM, all as contracted for and promised; and also by billing Elhannon for work done for other Bartlett clients and spraying banned chemicals on Elhannon's property; and also by refusing to negotiate, mediate, or arbitrate the above-described dispute.

ECF No. 1 ¶ 86.  The paragraph describing breach of the implied covenant of good faith includes the same facts.  *Id.* ¶ 91.  The only difference between the two is that Count II states that Bartlett "exhibited bad faith" and adds in clauses claiming Bartlett did not intend or decided not to take the various

actions described in Count I.[1]    Count II thus rests on the same

facts as Count I and appears to seek the same damages.

Alternative pleading is generally permitted by the Federal

Rules of Civil Procedure.  *Marino v. Bank of Am. Home Loans*, No.

2:11-cv-241, 2013 WL 6528521, at *4 (D. Vt. Dec. 10, 2013).

However, New York law treats the implied covenant of good faith

and fair dealing as a part of every contract.  Elhannon may

therefore maintain any allegations related to Bartlett's lack of

good faith and fair dealing as an alternative theory within its

breach of contract claim but not as a separate cause of action.

*See Barbara v. Marinemax*, No. 12-CV-0368(ARR), 2012 WL 6025604,

---

[1] Count II states:

> Bartlett exhibited bad faith, and has thereby breached this
> covenant, by, among other things, not inspecting and not
> intending to inspect, or deciding not to inspect; not
> diagnosing and not intending to diagnose, or deciding not
> to diagnose; not treating and not intending to treat, or
> deciding not to treat; not providing a "thorough plant
> health care program" and not intending to provide such, or
> deciding not to provide such; not providing a "MoniTor"
> program and not intending to provide such, or deciding not
> to provide such; intentionally or negligently underspraying
> or not to fully, adequately, sufficiently, and/or
> efficaciously spraying, or deciding not to fully,
> adequately, sufficiently, and/or efficaciously spray; and
> not providing an IPM or not intending to provide an IPM, or
> deciding not to provide such, all as contracted for and
> promised; and also by billing Elhannon for work done for
> other Bartlett clients and spraying banned chemicals on
> Elhannon's property; and also by refusing to negotiate,
> mediate, or arbitrate the above-described dispute as per
> the terms of Bartlett's own contract.

ECF No. 1 ¶ 91.

at *17 n.10 (E.D.N.Y. Dec. 4, 2012) (explaining that even though the plaintiffs did not allege a claim for breach of the implied covenant as a separate cause of action the court could nevertheless consider it "in-the-alternative" to their breach of contract claim).

Count II is accordingly **dismissed** as duplicative without prejudice.  Elhannon may, however, amend its complaint to clarify if it relies on any allegations that are not part of the contract to support this claim.

### C. Count III – Negligence

Next, Bartlett challenges Elhannon's claim for negligence, arguing that it also is duplicative of Elhannon's claim for breach of contract.  Under New York law it is "well-established" that a simple breach of contract is not a tort unless a legal duty independent of the contract itself has been violated. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 194 (N.Y. 1987); *see also New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) ("[A] defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations.").  This independent legal duty must "spring from circumstances extraneous to, and not constituting elements of, the contract." *Clark-Fitzpatrick*,

14

516 N.E.2d at 194.  However, the independent duty nevertheless may be connected with and dependent upon the contract.  *Id.*

A plaintiff fails to state a claim for negligence when the complaint merely restates in slightly different language the "implied" contractual obligations asserted in the cause of action for breach of contract.  *Id.*  It is not enough to allege that the defendant failed to exercise "due care" in performing the contract.  *Id.*  "Merely charging a breach of a 'duty of care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim."  *Id.; see also Torres v. Baum*, No. 1:10-CV-1385(LEK/RFT), 2011 WL 2532945, at *5 (N.D.N.Y. June 24, 2011) ("[W]hen the legal duty springs from the contract or is dependent upon the contract, such as failing to exercise 'due care' in performing those terms, then the breach is not a tort.").

Elhannon's negligence claim alleges that Bartlett owed Elhannon a duty to "properly, competently, and reasonably inspect; diagnose; treat (spray); provide a 'thorough plant health care program'; provide a 'MoniTor' program; provide an IPM; to not bill Elhannon for work done for other Bartlett clients; and to not spray banned chemicals on Elhannon's property."  ECF No. 1 at 95.  Elhannon notes that this claim also encompasses its allegations that Bartlett falsified

spraying records and used an unlicensed sprayer.  ECF No. 19 at 4.

Bartlett's alleged "duties" to inspect, diagnose, treat, provide a health care program, provide a MoniTor program, and provide an IPM program clearly are promises embedded within the contract because they go to the heart of Bartlett's alleged agreement to provide tree care.  These "duties" are not independent and therefore must be dismissed as duplicative.

The alleged "duties" to not bill Elhannon for work done for other Bartlett clients, to not spray banned chemicals, to not falsify spraying records, and to use a licensed sprayer present a different case.  According to Elhannon's Sur-reply, these facts and circumstances are independent because none of the contracts say that Bartlett will not spray banned chemicals, fraudulently misbill Elhannon, falsify spraying records, or use unlicensed sprayers.  ECF No. 19 at 4-5.  While Count I's description of the ways Bartlett breached the contract includes some of these allegations, the Court is persuaded that they spring from circumstances extraneous to the contracts between the parties.  Thus Elhannon may maintain a cause of action for negligence based on duties independent from the contracts at issue in this case.

Accordingly, the Court **denies** Bartlett's motion with respect to Count III.

**D. Count IV – Negligent Misrepresentation/Fraud**

To state a claim for negligent misrepresentation under New York Law a plaintiff must adequately plead five elements: (1) the defendant had a duty, as a result of a special relationship, to give correct information, (2) the defendant made a false representation that it should have known was incorrect, (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose, (4) the plaintiff intended to rely and act upon it, and (5) the plaintiff reasonably relied on it to his or her detriment. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). The court considers three factors to determine if a special relationship and duty exist: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (quoting *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)). Specialized knowledge usually arises due to the speaker's status as a professional, such as an accountant or an engineer, with a particular background in the subject of the alleged

17

misrepresentation.  *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 400 (S.D.N.Y. 2004).

However, where the duty arises in commercial contexts in which a contract exists, the duty attendant to that special relationship must also "spring from circumstances extraneous to, and not constituting elements of the contract, although it may be connected with and dependent upon the contract."  *Id.* at 401 (quoting *Clark-Fitzpatrick,* 516 N.E.2d at 194)).  In other words, "[i]f the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort."  *Id.* (quoting *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980)).

Elhannon's Complaint states that Bartlett's representations relevant to its negligent misrepresentation claim include promising that Bartlett "could, and would a) inspect; b) diagnose; c) treat; d) provide a 'thorough plant health care program'; e) provide a 'MoniTor' program; f) fully, adequately, sufficiently, and/or efficaciously spray; and g) provide an IPM."  ECF No. ¶ 100.  For the same reasons described above, these promises constitute elements of the contract.

Elhannon also argues that there is a difference between what Elhannon promised it *could* do and what Elhannon promised it *would* do.  This is largely a distinction without a difference in

18

this case.  Whichever view of the facts the Court takes, both boil down to the same result: holding Elhannon to the promises it made in the contract between the parties.

However, Elhannon has alleged other facts sufficient to state a claim for negligent misrepresentation based on Bartlett's alleged expertise and repeated assurances that Elhannon would receive a total tree care program.  According to Elhannon, Bartlett held itself out as an expert with specialized knowledge related to tree care.  Elhannon gave Bartlett complete control to do whatever needed to be done to diagnose and treat any and all problems in each of Elhannon's nurseries.  Elhannon also sufficiently alleged that it relied on Bartlett's representations about its expertise to its detriment.

Moreover, Bartlett made several additional specific representations separate and apart from those contained in the contracts including, at a minimum: (1) in 2011 that Bartlett would "take care of" the emerging disease and pest problem, a statement, (2) in 2011 that it would revise and correct its program to eradicate the disease and pest problem, (3) in March 2013 that it would "take care of" the burgeoning disease outbreak, and (4) in June 2013 that it would spray the entire Elhannon nursery and fix the growing disease and pest problem.  ECF No. 12 at 18.  These representations are collateral to the contract and also support Elhannon's claim for negligent

19

misrepresentation.  Elhannon has likewise sufficiently alleged that it relied on these representations to its detriment.

Accordingly, Bartlett's motion is **denied** with respect to Count III.

### E. Count V – Intentional Misrepresentation/Fraud

Elhannon describe Counts V as a claim for fraudulent inducement.  To prove fraud under New York law a plaintiff must show that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Ellington Credit Fund*, 837 F. Supp. 2d at 196-97 (S.D.N.Y. 2011) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 19 (2d Cir. 1996)).

Applying New York law, the Second Circuit has found where "a fraud claim arises out of the same facts as Plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and the plaintiff's sole remedy is for breach of contract." *Catamount Radiology, P.C. v. Bailey*, No. 1:14-CV-213, 2015 WL 3795028, at *6 (D. Vt. June 18, 2015) (quoting *Telecom Int'l Am., Ltd. v. AT & T Corp.,* 280 F.3d 175,

20

196 (2d Cir. 2001)).  When, as is the case here, a fraud claim is stated in conjunction with a breach of contract claim a plaintiff must either (1) demonstrate a legal duty separate from the duty to perform under the contract, (2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. *Ellington Credit Fund,* 837 F. Supp. 2d at 197-98.

Claims of fraud must be plead with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")  Accordingly, the Complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'"  *Ellington Credit Fund,* 837 F. Supp. 2d at 197 (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir. 1996)).  Allegations that are conclusory or unsupported by factual assertions are insufficient.  *Id.*

The Complaint states that Bartlett's representations and promises relevant to its fraud claim include that Bartlett would

inspect, diagnose, treat, provide a "thorough plant health care program," provide a "MoniTor" program, spray, and provide an IPM program.  ECF No. 1 ¶ 107.  Once again, these are the exact promises within the contract that Elhannon claims Bartlett failed to perform.  The Complaint states that Bartlett's promises were false, Bartlett knew they were false when made, and Bartlett had no intention of carrying them out.  *Id.* ¶¶ 108-109.  Elhannon argues its Complaint states a claim beyond an allegation that Bartlett never intended to perform the contract but the Court is hard pressed to see this distinction in the Complaint itself.  Simply put, the face of Complaint alleges that Bartlett did not intend to perform the contract when it promised it would do so.  This alone would be insufficient to state a separate claim of fraud.  *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994) ("[W]here a fraud claim arises out of the same facts . . ., with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract*.*")

However, Elhannon has sufficiently alleged that Bartlett also made collateral or extraneous misrepresentations that induced Elhannon to sign the contracts in the first place and to continue to engage Bartlett year after year, namely that it had

special and extensive expertise as described above.  ECF No. 19
at 7; *see Ross v. DeLorenzo*, 813 N.Y.S.2d 756, 760 (N.Y. App.
Div. 2006) ("[M]ere misrepresentation of an intention to perform
under [a] contract is insufficient to allege fraud . . . .
Conversely, a misrepresentation of material fact, which is
collateral to the contract and *serves as an inducement* for the
contract, is sufficient to sustain a cause of action alleging
fraud.") (emphasis added) (quoting *WIT Holding Corp. v. Klein*,
724 N.Y.S.2d 66 (N.Y. App. Div. 2001)); *New York Univ.*, 662
N.E.2d at 767 ("Where a party has fraudulently induced the
plaintiff to enter into a contract, it may be liable in tort . .
. .").

Other collateral misrepresentations that may have
potentially induced Elhannon's renewal of the contract include
statements by Mr. Gardner such as: (1) his statement that he
would "take care of" a particular insect outbreak, (2) his 2011
promise to revise the program, (3) his 2013 promise to "take
care of" an insect outbreak, (4) his statement that it was "not
too late" to address the bug problem, (5) his promise to
"personally inspect" Elhannon's entire nursery, (6) his promise
to "check in" with Elhannon every time he henceforth came to
inspect, (7) his assertion that sprayers have to wait to spray
until the insects are fully hatched, and (8) his promise to
spray the entire nursery.  Mr. Graham's statement that the

chemicals would "walk" was also potentially a collateral, inducing statement.

While Count V does not mention Bartlett's expertise or any of these potentially collateral representations specifically, it does incorporate by reference all of the allegations stated above it.  When the Court reads Count V in the context of the Complaint as a whole, it finds allegations described with sufficient particularity as required by Rule 9(b) to conclude that Elhannon has stated a claim for fraud.  Thus Bartlett's motion to dismiss is **denied** with respect to Count V.

## F. Count VI – Fraud in the Performance

Count VI is described as "Fraud in the Performance."  The parties discuss Counts V and VI in the same sections of their briefs and at times elide any distinctions between the two. Count VI states that "Bartlett's fraudulent refusal or failure to carry out its duties under the contracts directly and proximately caused Elhannon's harm, losses, and/or damages." ECF No. 1 ¶ 11.  On the face of the Complaint, Count VI is thus another claim for fraud focused on the same duties as described in the contract.  New York law requires a claim for "fraud in the performance" that reiterates a claim for breach of contract to be dismissed. *See Wolf v. Glazer*, 191 N.Y.S.2d 532, 533 (N.Y. App. Term 1959) ("The fraud alleged constitutes, at most,

fraud in the performance of the contract.  Under such pleadings a cause of action is alleged only for breach of contract.").

However, other allegations in the Complaint may ultimately be sufficient to state a claim for fraud beyond fraudulent inducement described above in Count V.  For example, Elhannon alleges elsewhere that Bartlett falsified spraying records, falsified billing records, and billed Elhannon for work done outside of New York and for other Bartlett clients.  At this point, however, Elhannon has not stated any of these allegations with the particularity required by Rule 9(b).

Accordingly, Count VI is **dismissed** without prejudice. Elhannon may amend its Complaint if it wishes to describe other examples of Bartlett's potentially fraudulent behavior with particularity.

### G. Count VII - Violation of New York's General Business Law

New York law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  N.Y. Gen. Bus. Law § 349.  To state a cause of action under § 349, a plaintiff must demonstrate that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)

The threshold question in § 349 cases is often whether or not the act in question was "consumer-oriented," and Bartlett's motion focuses on this element of Elhannon's claim. *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004). "Consumer-oriented conduct does not necessarily require repetition or a pattern of deceptive behavior, but to state a claim of consumer-oriented deception, a plaintiff must allege that the disputed acts or practices have a broader impact on consumers at large." *Id.* Private contract disputes, unique to the parties would not fall within the ambit of the statute. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, N.A., 647 N.E.2d 741, 744 (N.Y. 1995); *see also Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 301 (E.D.N.Y. 2010) ("[C]ourts have stated consistently that unique private transactions between sophisticated business parties do not give rise to liability under the statute."). While the "consumer-oriented act" prong does not preclude the application of § 349 to disputes between businesses per se it does severely limit it. *Exxonmobil*, 328 F. Supp. 2d at 448. In short, though businesses may sometimes bring § 349 claims, they may do so only where the defendant's deceptive conduct is, at least to some extent, directed at non-business consumers. *Spirit Locker*, 696 F. Supp. 2d at 304. Liability attaches primarily where a party's misrepresentations

are boilerplate and have the potential to be repeated in order to deceive numerous similarly situated buyers.  *Id.*

Elhannon has alleged sufficient facts to demonstrate that Bartlett's actions were potentially consumer-oriented.  While Elhannon is a large tree farm and not an individual consumer, Elhannon's Complaint claims that its contract with Bartlett was a "form contract" that Bartlett "used and uses with all customers or clients" and was "not a form negotiated specifically between Bartlett and Elhannon."  ECF No. 1 ¶ 124. Rather, it contained Bartlett's "standard boilerplate."  *Id.* Elhannon also alleges that with respect to the subject of the contract, Elhannon was an unsophisticated purchaser and Bartlett was a sophisticated seller.  *Id.* ¶ 123.  Finally, Elhannon alleges that the transaction between the parties and the services Bartlett offered were not unique but rather "are offered by Bartlett, every day, to the consuming public at large."  *Id.* ¶ 125.  Accepting these factual allegations as true, as it must at this stage, the Court is persuaded that Bartlett's activity was consumer-oriented.  This issue obviously represents an ongoing factual dispute but Elhannon's allegations are sufficient for purposes of this motion.

Proof that Bartlett's actions were directed to consumers does not end the inquiry.  Elhannon has also sufficiently stated allegations relevant to the other prongs namely that Bartlett

27

engaged in an act or practice that was deceptive or misleading in a material way and that Elhannon has been injured by reason thereof. *Oswego*, 85 N.E.2d at 25. Accordingly, Bartlett's motion to dismiss Count VII is **denied**.

### H. Count VIII - Punitive/Exemplary/Multiple Damages

Under New York Law, it is "well settled" that punitive damages may not be asserted as a separate cause of action. *Henry v. Concord Limousine, Inc.*, No. 13-cv-0494(JS)(WDW), 2014 WL 297303, at *5 (E.D.N.Y. Jan. 24, 2014). Elhannon does not argue that its request for punitive damages may remain a separate claim, rather it asserts that it still has a potential right to recover punitive damages as a remedy. Count VIII is **dismissed** but this dismissal is without prejudice to Elhannon continuing to seek punitive damages as a remedy for Bartlett's allegedly tortious conduct.

### I. The Court's Dismissals Are Without Prejudice

Bartlett cites *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) to argue that all of Elhannon's claims should be dismissed with prejudice because Elhannon is "unable to allege any fact[s] sufficient to support [them]." *Id.* at 48. Bartlett argues that tort claims duplicative of breach of contract claims should be dismissed with prejudice. Here there is simply no reason to depart from this Court's general practice of giving plaintiffs an opportunity to cure

defects in their pleading.  To dismiss any claim with prejudice would be entirely premature at this point.  Therefore all of the claims dismissed as described above are dismissed **without prejudice.**

### Conclusion

Bartlett's motion to dismiss is **granted in part and denied in part.**  Counts II, VI, and VIII are dismissed **without prejudice.**  The Court grants Elhannon leave to amend its Complaint within **30 days** of this Order.

DATED at Burlington, in the District of Vermont, this 28th day of August, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge