ELHANNON LLC,et al                          :
       Plaintiffs,                      :
                                        :
       v.                               :    Case No. 2:14-cv-262
                                        :
THE F.A. BARTLETT TREE EXPERT                :
COMPANY,                                     :
       Defendant.                       :

**OPINION AND ORDER**

**I. Introduction**

This matter arises from a contract and consumer fraud
dispute between Plaintiffs Elhannon Wholesale Nurseries, LLC, a
New York corporation, and its predecessors (collectively
"Elhannon"), and Defendant F.A. Bartlett Tree Expert Company
("Bartlett"), a Connecticut corporation. Elhannon alleges that
between 2007 and 2014, the parties entered into a series of
contracts calling for Bartlett to design and execute an
integrated pest management program for Elhannon's entire tree
nursery, which it called the "MoniTor" program. Elhannon alleges
that, despite Bartlett's representations and contractual
promises, Bartlett employees underserviced the nursery, leading
to a large scale outbreak of disease and insects on its trees.
In addition, Elhannon alleges that Bartlett applied chemicals
that were illegal under New York law to Elhannon's nursery in
order to attempt to control an incipient outbreak. Finally, the

Amended Complaint states that Bartlett falsified its records to give the impression that it was doing more work at Elhannon than it actually performed, and that Bartlett improperly billed Elhannon for work done for others. As a consequence of these failures, Elhannon alleged that it had to destroy trees valued at several million dollars and to implement its own pest management program. Elhannon brings claims for breach of contract, negligence, negligent misrepresentation, fraud and intentional misrepresentation, fraud in the performance, and violations of New York's General Business Law.

Following a series of discovery disputes, the Court granted the parties' joint motion for a revised discovery schedule. ECF 128. Discovery is now set to be completed by November 30, 2017, and summary judgment motions are due on December 31, 2017. Nevertheless, on June 7, 2017, Bartlett filed a motion for dismissal based on spoliation of the evidence and a motion for summary judgment. ECF 124. In the first motion, Bartlett contends that it was prejudiced by Plaintiff's destruction of "the very trees for which [Elhannon] seeks millions of dollars in damages from Bartlett." *Id.* at 5. As a result of this alleged spoliation of the evidence, Bartlett contends that it will be unable to challenge Plaintiff's claims about the number of trees that were allegedly damaged by its conduct, or to independently

determine the cause of the alleged damage. Rather, it may only assess the cause and scope of the damages from the documentary evidence that Elhannon gathered before destroying the trees, as well as its inspection of the nursery after much of the tree destruction took place. Consequently, Bartlett moves the Court to (i) dismiss the Amended Complaint and award it attorneys' fees; (ii) hold an evidentiary hearing on the spoliation issue to allow it to present evidence that the harm it has suffered from Elhannon's destruction of evidence warrants dismissal; or (iii) grant any other relief it finds just and proper.

Furthermore, Bartlett asserts that Plaintiffs do not own the trees on the Nursey, or the Nursery itself. As a result, Defendant argues that Plaintiffs have sustained no physical harm and cannot recover for economic losses in tort. In addition, Bartlett asserts that Plaintiffs have not suffered compensable damages under any alternative theory, including harm caused by illegal spraying, loss of business reputation, or Elhannon's alleged payment for work performed for other Bartlett customers. Thus, Bartlett argues that no rational jury could find in Elhannon's favor, and moves for summary judgment on all counts of Plaintiff's amended complaint. Elhannon opposes both motions, asserting that its removal of trees was necessary to mitigate damages to the nursery, that it did, in fact, own the trees on

the nursery, and that it has sustained damages. For the reasons discussed below, the Court **denies** Bartlett's motions.

## II. Discussion

*a. Motion to Dismiss Due to Spoliation of Evidence*

A district court may impose sanctions for spoliation pursuant to its inherent power to control litigation. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Id.* Courts should craft sanctions in order to (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the destruction of evidence by the opposing party. *Id.* Although a court may choose to dismiss a case as a sanction for spoliation, it should do so "only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *Id.* (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir. 1988). Thus, before dismissing a party's case, the court should first consider whether dismissal is the only adequate remedy to "vindicate the trifold aims" of the

spoliation sanctions doctrine. *Id.* at 780; *see also Dahoda v. John Deere Co.*, 216 F. App'x 124, 125-26 (2d Cir. 2007) (considering whether "no lesser sanctions exist that would cure the potential prejudice" before concluding that district court abused its discretion in dismissing case for spoliation).

In order to obtain an adverse inference instruction based on spoliation –a lesser sanction than dismissal –a party must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Auth. of N.Y. & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.2002)). Dismissal, however, requires a stronger showing of a "culpable state of mind" than a mere instruction. *See e.g., Great N. Ins. Co. v. Power Cooling, Inc.*, Case No. 06-CV-874, 2007 WL 2687666, at *10 (E.D.N.Y. Sept. 10, 2007) (holding that degree of fault did not warrant dismissal, but did establish that Plaintiff acted with requisite culpability to warrant a lesser sanction). The harshest sanction "is appropriate if there is a showing of willfulness, bad faith,

or fault on the part of the sanctioned party." *West,* 167 F.3d at
779. "Although dismissal can be entered even absent a finding of
bad faith or willfulness, *see Reilly v. Natwest Mkts. Group,
Inc.,* 181 F.3d 253, 267 (2d Cir.1999) (noting that gross
negligence constitutes showing of "fault" that could warrant
sanction of dismissal), the degree of fault on the part of the
plaintiff is a relevant consideration in fashioning an
appropriate sanction." *Dahoda*, 216 F. App'x at 125. In
considering the degree of fault, for example, the Second Circuit
has looked to whether the non-moving party exhibited dilatory
behavior or compliance with prior discovery orders. *See Metro
Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x 607, 610
(2d Cir. 2014). Ultimately, the Second Circuit has found that a
"case-by-case approach to the failure to produce evidence" is
appropriate because "such failures occur along a continuum of
fault –ranging from innocence through the degrees of negligence
to intentionality." *Residential Funding Corp. v. DeGeorge Fin.
Corp.*, 306 F.3d 99, 107–08 (2d Cir. 2002) (internal quotation
omitted).

Here, there is no question that Elhannon acted willfully in
destroying the allegedly infected trees. In fact, Elhannon
clearly acted with the prospect of litigation in mind in doing
so, since, according to Mr. Sutton's testimony, it believed

removal was necessary in order to mitigate damages. ECF 129-2;
129-7, p. 3-4. That concern was warranted: in certain
circumstances, New York law[1] imposes an obligation on a "party
subjected to injury from the breach of a contract ... to make
reasonable efforts to render the injury as light as possible."
*Losei Realty Corp. v. City of N.Y.*, 254 N.Y. 41, 47-48, 171 N.E.
899, 902 (1930); *see also Cornell v. T. V. Dev. Corp.*, 17 N.Y.2d
69, 74, 215 N.E.2d 349, 352 (1966) ("While the plaintiff is
required to mitigate damages upon breach, the burden of proving
a lack of diligent effort to mitigate damages is upon the
defendant"); *Donald Rubin, Inc. v. Schwartz*, 191 A.D.2d 171,
171-72, 594 N.Y.S.2d 193, 194 (1993) ("The obligation to
mitigate damages [in a contract dispute] turns upon the
particular facts in the individual case."). In the same vein, a
party who is injured in tort may have an obligation to employ
"reasonable and proper efforts to make the damage as small as
practicable." *N.Y. Tel. Co. v. Harrison & Burrowes Bridge
Contractors, Inc.*, 3 A.D.3d 606, 609-10, 771 N.Y.S.2d 187, 191
(2004) (internal quotation omitted).

However, parties to a dispute may also be subject to an
obligation to preserve evidence for purposes of litigation. "The
obligation to preserve evidence arises when the party has notice

---

[1] For the reasons outlined in the Court's last order on Defendant's prior
motion to dismiss, ECF 25, New York law guides the substance of the contract
and torts disputes in this case.

that the evidence is relevant to litigation or when a party

should have known that the evidence may be relevant to future

litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436

(2d Cir. 2001). "Identifying the boundaries of the duty to

preserve involves two related inquiries: *when* does the duty to

preserve attach, and *what* evidence must be preserved?" *Zubulake*

*v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). In this

case, the damage to the trees is the primary subject-matter of

the litigation, and is therefore clearly relevant. Moreover, the

duty to preserve the physical evidence attached, at latest, on

December 10, 2014, when Elhannon filed its first complaint in

this case. ECF 1; *see Id.* (finding that duty to preserve

attached at latest when employee alleging discrimination filed

her complaint before the Equal Employment Opportunity

Commission).[2] In fact, Elhannon continued to destroy trees after

this point. *See* ECF 129-1, p. 5 (acknowledging that, according

to Elhannon's payroll records, its tree destruction ended in the

week of September 11, 2016).

In this sense, Elhannon was arguably subjected to competing

obligations with respect to the tree destruction: on the one

hand, to destroy trees that could cause further damages, and on

---

[2] It is arguable that the obligation attached sooner, such as at some point
after Elhannon received Bartlett's response to its demand letter dated
September 8, 2014. Bartlett's denial of liability at this point would have
put Elhannon on notice that future litigation was likely, and that the nature
of the tree damage would likely be the subject of that litigation.

the other hand to preserve trees that might serve as physical evidence of the injury it suffered in this case. While not binding on this Court, district courts' decisions from other circuits provide a persuasive framework for addressing situations when a party's obligations regarding the preservation of physical evidence are in tension. First, courts have noted that "evidence that a party destroyed evidence in the course of mitigating damages is relevant to whether the destruction was intentional and in bad faith." *Flint Hills Res. LP v. Lovegreen Turbine Servs., Inc.,* Case No. 04-4699 JRT/FLN, 2006 WL 2472819, at *5 (D. Minn. Aug. 25, 2006). In *Flint,* the district court found that dismissal was not warranted even where the opposing party was not provided with the opportunity to inspect the physical evidence, where removal of that evidence was necessary to avoid accruing damages of roughly a million dollars per day and the non-moving party took "all reasonable steps to preserve evidence" by documenting the physical evidence with photographs and notes and saving fragments of the removed evidence. *Id.* In contrast, other district courts have found that spoliation sanctions may be required where the failure to preserve evidence in its original state "was not urgently required" or necessary for purposes of mitigation. *See e.g., PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1192-94 (D. Or. 2012).

Here, Elhannon points to the affidavit of James Sutton,
Elhannon's president, along with evidence from its tree experts,
to support its contention that the purpose of destroying the
nursery trees was to mitigate its damages arising from the harm
allegedly caused by Bartlett. ECF 130, p. 8.[3] Separately,
Elhannon argues that dismissal would not be warranted even if
the court were to find a culpable mental state because, "long
before filing this lawsuit [it] diligently documented the damage
to the trees, and also its destruction of the trees, in several
hundred photos (nearly 350) and videos (110), and also compiled
a detailed spreadsheet listing the destroyed trees," which it
provided to Bartlett three months before filing suit. *Id.* at 12.

In contrast, Bartlett implies –although it does not
expressly argue so in its initial motion –that the destruction
of the physical evidence in this case was more widespread than
necessary to mitigate damages attributable to its own conduct.
Bartlett's expert, Judd Scott, attended a site inspection at the
nursery in June 2016. He later reported that "there was no way
for Bartlett to confirm the alleged damages because the trees
had either been destroyed, or were not identified by Elhannon,

---

[3] In particular, Elhannon contends that the destruction of trees was necessary
to limit the further spread of infestations to other trees at the nursery; to
avoid and/or limit Elhannon's reputational damage in the wholesale tree
nursery industry; and to avoid violating New York law, which designates
diseased or infested trees at nurseries as public nuisances subject to
destruction by a state agency, eradication orders and quarantine orders. *Id.*
at 8-9.

so that Bartlett could inspect them." ECF 124-13, p. 3. Bartlett
points to some examples, however, of trees which Bartlett was
able to obtain for testing which were not in fact infested by
pests by the time that Bartlett had access to them. In addition,
it points to testimony by Elhannon's expert, Jeffrey Ling, who
inspected the nursery in September 2014, stating that he could
not conclude that Bartlett was the cause of the damage to
certain, photographed trees.  This evidence suggests that
Elhannon may have destroyed trees that were either not infested
by pests or disease (and therefore potentially unnecessary to
remove for purposes of mitigating damages), or that were not
damaged as a consequence of Bartlett's conduct.

     In short, the evidence presented by the parties at this
stage –in the form of affidavits, experts' reports and
deposition testimony –suggests that there is a dispute of fact
concerning whether all of the destruction of the trees was, in
fact, necessary in order to mitigate damages, or whether it
actually produced unnecessary losses that were unrelated to
Bartlett's conduct. However, Plaintiffs have presented facts
suggesting that destruction was required for mitigation with
respect to at least some of the trees, and Defendants have not
made the case that none of the tree destruction was warranted.
For example, some of Mr. Ling's testimony suggests that

causation can be determined from the photographic evidence Elhannon collected, and Mr. Sutton's testimony, if credited by a factfinder, would suggest that he destroyed trees which he found to be damaged by insects or disease. ECF 124-12. Under these circumstances, the Court finds that at least some of Elhannon's tree destruction was necessary to mitigate damages, and that, in the absence of a court order on this issue at the time, Plaintiff's efforts to preserve evidence through photographs and videos were reasonable.[4] Accordingly, Defendants have not made a sufficient showing of fault or bad faith in the destruction of the physical evidence to warrant dismissal of Plaintiff's case in its entirety on this ground. *See, e.g., PacifiCorp*, 879 F. Supp. 2d at 1192-94; *Flint Hills Res. LP,* 2006 WL 2472819 at *5. Nevertheless, the Court will reserve judgment on whether alternative sanctions might be necessary –including applying an adverse inference instruction to the evaluation of evidence in this case –if Plaintiffs are unable to show at a later stage that all of their tree destruction was, in fact, necessary to mitigate damages.

Finally, the Court is not persuaded that the prejudice suffered by Defendants in this case is so extreme that dismissal

---

[4] Elhannon also notified Bartlett that it had had to destroy trees "valued at several million dollars" in September 2014, before it filed suit in this case. ECF 124-8. Since Bartlett received notice only after a good number of trees had already been destroyed, the Court will not fault Bartlett for failing to solicit an inspection at that point in reaching its conclusion.

would be warranted even though Plaintiffs' degree of fault in destroying the evidence was limited. Elhannon notified Defendants of its continuing destruction of trees prior to filing this lawsuit, and allowed Defendants to inspect the nursery after the lawsuit began. Its employees also documented the trees with photographs and videos. Although Defendant has pointed to errors in Elhannon's own tally and record-keeping of the scale of tree damage attributable to Bartlett, it has not sufficiently demonstrated that it would be entirely unable to challenge Elhannon's calculation on the basis of the available evidence. In fact, Mr. Ling has challenged whether the damage was attributable to insects or disease, and thus whether Bartlett was responsible for the injury, in just this manner. Moreover, if the evidence collected by Elhannon about the damaged trees is insufficient to demonstrate causation, Elhannon will be prejudiced thereby, since it carries the burden of proving this element of its claim by a preponderance of the evidence. Finally, even if the limitations in the available evidence were more prejudicial to Bartlett than to Elhannon, the Court may be able to rectify that prejudice by providing an adverse inference instruction with regard to a certain subsection of the tree destruction. Thus, the Court finds that complete dismissal of Plaintiff's case is not warranted in light

of the particular circumstances surrounding the destruction of evidence in this case.[5]

      *b.   Motion for Summary Judgment for Failure to Prove Damages*

Next, Bartlett also moves for summary judgment on the ground that there is no genuine dispute of fact concerning whether Elhannon sustained damages, and therefore that no rational juror could find in Elhannon's favor. In particular, Defendant contends that Elhannon did not incur damages because it does not own the damaged trees, and because Elhannon has failed to provide evidence that it suffered any other form of injury. In response, Elhannon challenges the factual basis for Defendant's motion.

*i.   Standard of review*

Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P. v.*

---

[5] In light of the Court's conclusion on the spoliation claim, the Court need not address whether Defendant's motion should be denied as untimely.

*Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (citing *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir.2008)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)) (internal quotations omitted). However, "a court is obliged not to consider inadmissible evidence at the summary judgment stage, [and] it remains in that court's discretion whether to strike the inadmissible portions or simply disregard them." *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010).

Finally, "the nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation omitted). As such, "only in the rarest of cases may summary judgment be granted against a plaintiff who has not been

afforded the opportunity to conduct discovery." *Id.; see also*
*Morales v. Pallito*, Case No. 1:12-CV-247, 2012 WL 7748859, at *1
(D. Vt. Dec. 18, 2012), *report and recommendation adopted,* Case
No. 1:12-CV-247-JGM-JMC, 2013 WL 1089878 (D. Vt. Mar. 15, 2013)
("Generally speaking, it is appropriate for a party to move for
summary judgment *after* both sides have had a meaningful
opportunity to conduct discovery."); *G-I Holdings, Inc. v. Baron
& Budd,* 213 F.R.D. 146, 150 (S.D.N.Y. 2003) ("Because the
parties are now in the midst of continuing discovery, it would
be appropriate to deal with a consolidated summary judgment
motion from all the defendants on all potential issues
(including the one dealt with in the instant summary judgment
motion) at the close of discovery."). Nevertheless, where the
record is well-developed or the non-moving party has failed to
identify the essential facts that he seeks to discover, the
Second Circuit has declined to reverse district courts' grants
of summary judgment prior to the close of discovery. *See Young
v. Benjamin Dev. Inc.*, 395 F. App'x 721, 722-23 (2d Cir. 2010);
*Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003).

Although Bartlett has moved for summary judgment prior to
the close of discovery, Elhannon has not argued in response that
a summary judgment decision would be inappropriate at this
stage. However, the Court notes that even if Bartlett had set

forth more persuasive arguments for granting summary judgment on the basis of the evidence discovered until this point, adjudication would be more appropriate after the close of discovery. Nevertheless, since the admissible evidence discovered to date suggests that there are at least material disputes of fact on the damages issues raised in Bartlett's motion, the Court will deny the motion at this stage.

*ii. Material disputes of fact require denial of summary judgment*

Defendant contends that "there is no genuine issue of material fact that the Plaintiffs have not been damaged by any of the alleged wrongful conduct of Bartlett." ECF 124, p. 23. As a preliminary matter, Bartlett argues that that Plaintiff must sustain physical harm to recover in tort. *Id.* As a result, Defendant seeks dismissal of counts III, IV, V and VI, but does not address the breach of contract or New York statutory claims.[6] In response, Elhannon does not challenge the need to show physical harm, or address the applicability of Defendant's arguments to the non-tort claims. Rather, it asserts that Defendants overlook key facts contradicting the evidence Bartlett has set forth.

---

[6] Nevertheless, at the end of its motion, Defendant seeks dismissal of "all counts of Plaintiffs' Amended Complaint." *Id.* at 29. In the absence of any argument pertaining to counts I and VII, however, the Court sees no need to address potential problems with these claims.

The Court agrees that, at a minimum, material disputes of
fact preclude summary judgment on Elhannon's tort claims. New
York law generally requires a showing of physical injury or
damage to property to recover in tort. *See Caronia v. Philip
Morris USA, Inc.,* 22 N.Y.3d 439, 452, 5 N.E.3d 11 (2013)
("Allowance of such a [tort] claim, absent any evidence of
present physical injury or damage to property, would constitute
a significant deviation from our tort jurisprudence."); *but see
Johnson v. N.Y. City Bd. of Educ.*, 270 A.D.2d 310, 312, 704
N.Y.S.2d 281, 283 (2000) ("physical injury is no longer a
necessary element of a cause of action for negligent infliction
of emotional distress"). In particular, "plaintiffs must plead
actual injuries or damages, resulting from defendants' conduct,
as an essential element of" negligence, negligent
misrepresentation, and fraud. *See Frank v. DaimlerChrysler
Corp.*, 292 A.D.2d 118, 121–22, 741 N.Y.S.2d 9, 12–13 (2002)
(collecting cases).

Bartlett does not provide support for its assertion that
only a tort plaintiff who has an ownership interest over
property that he or she claims as the subject of injury is
entitled to damages. Rather, Defendant assumes that no other
type of proprietary interest is relevant to determining whether
a plaintiff has shown injury. In fact, this Court's review of

New York's jurisprudence reveals a somewhat more complex set of norms, with some courts contemplating potential damages arising from torts claims for individuals who do not own the property at issue in their suit. *See, e.g., Julia Properties, LLC v. Levy,* 137 A.D.3d 1224, 1226 (N.Y. App. Div. 2016) (concluding that "the mere fact that the plaintiff [lessee] expended no money to repair any damage to the property does not warrant dismissal of the cause of action alleging trespass."); *Abbo-Bradley v. City of Niagara Falls*, 132 A.D.3d 1318, 1320 (N.Y. App. Div.) (the court erred in denying those parts of their respective motions seeking to dismiss the third and fourth causes of action, asserting private nuisance and trespass, as alleged by plaintiffs as parents and natural guardians of their infant children, inasmuch as plaintiffs' children lack an ownership *or possessory interest* in the respective properties (emphasis added)).

Nevertheless, even if the law requires nothing less than Elhannon's full ownership of the trees in order for the nursery to recover for damages to them, there is at least a material dispute of fact concerning the ownership question. First, Bartlett contends that Elhannon's president, Mr. Sutton, testified in unrelated cases that he (rather than Elhannon) was the owner of the trees on the nursery. However, the parties

disagree about whether that testimony would apply to the relevant time period in this suit: Elhannon contends that ownership of the trees transferred to Elhannon on August 1, 2011, when the Suttons executed leases in favor of Elhannon, and that the ownership-related statements made in suits arising before that time are no longer applicable.[7] Bartlett argues that Mr. Sutton made two statements after the leases were executed, however, indicating that ownership of the trees remained with the Suttons. In fact, however, even in the excerpts identified in Bartlett's brief, Mr. Sutton only represented that he owned the property or land at a given address at a particular time. He also stated that "per IRS rules the trees are grown under a personal name" when asked how "the growing of the trees operated." ECF 124-21, p. 3. However, he made no statements

---

[7] First, Elhannon argues in its response that Mr. Sutton's statement that he and his wife "were the only owners of the trees and plants involved in the transactions at issue in this cause of action," ECF 124-19, p. 1, is not problematic, because the cause of action at issue (*Harrington, Apex Nursery, Inc., and Elhannon Wholesale Nurseries LLC v. Sutton*) pertained to events which took place before June 9, 2011, the date the suit was filed. *See* ECF 129, p. 4. Bartlett does not dispute this assertion in its reply. Second, Elhannon contends that Mr. Sutton's statements in *Galusha Transport LLC v. Elhannon* are not in conflict with his statements in this case because the events at issue in that lawsuit occurred in May and June, 2011. In reply, Bartlett asserts that Mr. Sutton represented that he owned the trees at the time of his deposition, which took place in 2012, after the leases were executed. *See* ECF 131, p. 5-6 (citing ECF 124-21). As noted above, Mr. Sutton did not actually make such a representation about the trees, but rather about the property at issue. Finally, Elhannon argues that Mr. Sutton's statements about the ownership of the trees in a third lawsuit, *D. James Sutton and Ruth Sutton v. Jerome Construction, Inc., and Felicity Harrington Purzycki*, also pertain to events which occurred in 2010 and 2011. Elhannon does not refute this assertion in its reply, but rather sets forth deposition testimony – which does not directly address the issue of tree ownership –in yet another case.

concerning the ownership of the trees. As such, the Court finds that this evidence does not squarely resolve the issue that Bartlett purports it to: namely, whether the Plaintiffs can show that they suffered damages as a result of the torts they allege.

Even assuming, for the sake of argument, that evidence from the other lawsuits is admissible and relevant to the time period at issue here, a material dispute of fact arises from the evidence at issue in this case. In particular, Mr. Sutton made contrary statements about tree ownership in his deposition in this case — namely, by testifying in September 2016 that Elhannon, rather than the Suttons, now owned the trees. At a minimum, this statement creates a material dispute of fact concerning Elhannon's relevant property interest in the trees, and therefore at least a dispute about the validity of Elhannon's claim of physical property damages. Accordingly, this inconsistency alone provides reason to deny Bartlett's motion for summary judgment.

Defendant contends that Supreme Court dicta should dissuade this Court from finding a material dispute of fact based on Mr. Sutton's testimony in this suit. *See* ECF 131, p. 8 (citing *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806-07 (1999)). However, the Second Circuit authority Bartlett sets forth for this assertion creates a more limited rule: that a

party cannot create a dispute of fact by making a statement in deposition testimony in a particular case which he or she later contradicts through affidavits provided to avoid summary judgment in the same case. *See Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). More recently, the Second Circuit reversed a district court's decision to disregard conflicting deposition testimony taken in a single matter at the summary judgment stage. *Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir. 1996). In *Hayes*, the Court noted that the second deposition was not taken to avoid summary judgment; that the first deposition was less reliable because it was taken without the presence of Plaintiff's counsel; and that the two deposition statements were only "arguably contradictory." *Id.* Similar circumstances arise in this case, where the parties debate whether all or some of the statements necessarily go to the same time period, the deposition in this case was not undertaken solely for the purpose of avoiding summary judgment, and the earlier statements were made in other matters, such that Plaintiff's counsel could not have been attentive to the factual issues at play in the

present case. Accordingly, in this context, no per-se rule
requires the Court to ignore Mr. Sutton's conflicting statement
about Elhannon's ownership of the trees in this case.

In addition, Elhannon points to ground leases dated August
1, 2011, whereby the Suttons lease property to Elhannon to use
the premises as a wholesale and retail nursery and landscaping
business. ECF 129-12. Plaintiffs argue that this lease itself is
evidence that Elhannon owns the trees, because New York courts
have held that nursery property tenants are the owners of the
nursery stock on leased property. *See* ECF 129, p. 8 (citing
*Kelder v. State,* 22 A.D.2d 999, 1000, 254 N.Y.S.2d 895, 898
(App. Div., 3d Dept. 1964)). In fact, the case cited by Elhannon
stands for the principle that where a fixture is sufficiently
annexed to the freehold so that it would pass between vendor and
purchaser, but is removable by a tenant if the right to remove
it is expressly reserved in the lease or implied from the
circumstances, the fixture is the property of the tenant who has
retained the right to remove it. *Kelder,* 22 A.D.2d at 999.

In this case, the leases at issue are somewhat unclear
about Elhannon's right to remove trees from the property. In
fact, as Bartlett points out in its reply, the leases provide
that "all erections, alterations, additions and improvements,
whether temporary or permanent in character, which may be made

upon the premises either by the Landlord or the Tenant, except
furniture or movable trade fixtures installed at the expense of
the Tenant, shall be the property of the Landlord and shall
remain upon and be surrendered with the premises as a part
thereof at the termination of this Lease, without compensation
to the tenant." ECF 12-12, p.3. The leases do not specifically
mention the trees, or explain whether the trees would constitute
"movable trade fixtures" or "erections, alterations, additions
and improvements" to the property within the meaning of the
lease terms. However, it is relevant that the trees were clearly
intended to be used for Elhannon's business and trade. *See
Orange Cty.-Poughkeepsie M.S.A. Ltd. P'ship v. Bonte*, , 754
N.Y.S.2d 312, 312 (2003) ("communications tower erected by the
plaintiff on the leased premises was a trade fixture, as it was
annexed to the leased premises by the plaintiff, and intended to
be used solely for the plaintiff's business and trade ... As
such, the tower remained the plaintiff's personal property."
(internal quotation omitted)). Moreover, Mr. Sutton stated in
his affidavit that Elhannon retained the right to remove and
sell the trees on the leased properties. *See* ECF 129-2, p. 3.
Accordingly, although the Court has not been presented with a
full record on the circumstances relevant to Elhannon's rights
over the trees as a tenant, the facts presented so far create at
least a dispute of fact concerning the Plaintiffs' ownership

rights over the trees. As such, Bartlett is not entitled to summary judgment on this ground.

Finally, Bartlett further argues that Elhannon has not suffered any other type of compensable injury caused by its conduct. Since there is at least a dispute of fact concerning whether Elhannon has suffered the primary damages it alleges here – damage and disease to the trees it purports to have owned – the Court need not resolve whether Elhannon has suffered other, additional forms of damages. In any event, beyond those forms of harm that Elhannon has conceded it will not seek, Bartlett has merely alleged that Elhannon has not yet proven additional forms of harm. Since discovery is ongoing, and Elhannon may present additional evidence on the remaining issues,[8] the Court finds it both premature and unnecessary to determine whether there is sufficient evidentiary support for the other forms of damages that Elhannon has alleged.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss due to spoliation of the evidence and its motion for summary judgment are **denied.**

---

[8] Elhannon argues, for example, that some of the statements made by Felicity Harrington that Bartlett relies upon in this regard are hearsay, and that Ms. Harrington's deposition has yet to be taken in this matter.

Dated at Burlington, in the District of Vermont, this 2nd day of August, 2017.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge