UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT


ELHANNON LLC, et al.            :
                                :
    Plaintiffs,                 :
                                :
        v.                      :    Case No. 2:14-cv-262
                                :
THE F.A. BARTLETT TREE EXPERT   :
Company,                        :
                                :
    Defendant.                  :

## OPINION AND ORDER

Now before the Court is Defendant's motion *in limine* to permit Defendant to introduce evidence on cross-examination of prior lawsuits and claims involving Plaintiffs' principal, D. James Sutton. For the reasons set forth below, Defendant's motion is **denied**.

## Background

### A. Factual Background

This case arose from a contract and fraud dispute between Plaintiffs Elhannon Wholesale Nurseries, LLC; Elhannon Wholesale Nurseries, LLC; and Elhannon Wholesale Nurseries, Inc. (collectively "Elhannon") and Defendant F.A. Bartlett Tree Expert Company ("Bartlett"). Bartlett originally filed an action in small claims court and Elhannon subsequently filed this case. Elhannon's principal allegation is that Bartlett failed to perform under a series of contracts entered into between

Elhannon and Bartlett, for Bartlett to design and implement a pest management program for Elhannon's entire tree nursery. Elhannon alleges that Bartlett employees underserviced the nursery, leading to a large scale outbreak of disease and insects on its trees; that Bartlett applied chemicals that were not approved for use in Elhannon's nursery in order to attempt to control an incipient outbreak; and that Bartlett falsified its records to give the impression that it was doing more work at Elhannon than it actually performed.

The Amended Complaint alleges six causes of action: breach of contract, negligence, negligent misrepresentation, intentional misrepresentation/fraud, fraud in the performance, and violation of New York's General Business Rule. ECF 27.

**B. Other Sutton Fraud Claims**

Bartlett originally moved for an order permitting them to cross-examine Elhannon's principal D. James Sutton ("Sutton") about five prior and currently pending lawsuits and one additional incident concerning fraud allegations which Sutton had reported to the police. ECF No. 161. Bartlett later filed a supplemental pleading describing another Sutton lawsuit they wish to admit. ECF 213. Together, these six lawsuits and one additional police report are referred to as "Other Sutton Fraud Claims." They are described below.

*1. Employee check kiting and payroll fraud reported to the police*

In 2006, Felicity Purzycki (then Harrington), who had just started working at Elhannon, told Sutton that she believed two employees were stealing from the company and involved in a check kiting and payroll fraud scheme. ECF 172-2 at 2. After reviewing the company's accounting records, Sutton reported this misconduct to the police. *Id*. According to Sutton's deposition, one employee confessed to the police. ECF 161-1 at 3. These allegations did not result in any criminal charges. *Id*. at 6.

*2. Crow & Sutton Associates, Inc. v. C.R. Klewin Northeast, LLC et al.*

In this case, Crow & Sutton Associates ("C&S"), an entity for which Sutton serves as Chief Executive Officer, was a subcontractor on a construction project in Connecticut. *Crow & Sutton Associates, Inc. v. C.R. Klewin Northeast, LLC et al.*, No. HHDX04CV054016823S, 2010 WL 2573954 (Conn. Sup. Ct. May 21, 2010). C&S alleged that it did not receive all payment owed. *Id*. C&S brought multiple claims including contract-based claims under a payment bond, misrepresentation claims, and violations of Connecticut's Unfair Trade Practices Act. *Id*. Some claims were found to be time-barred, and others were defeated on summary judgment. *Id*.

### 3. *Sutton v. Barriere, Sup. Ct., Rensselaer County*

This case concerns a dispute between Mr. and Mrs. Sutton and their attorney. The Suttons became embroiled in a surety dispute with their surety company in July 2000. ECF No. 213-3. They retained an attorney to represent them in an action against their surety company. *Id*. During that action, there was disagreement over whether certain accounts should be placed into escrow. *Id*. At the conclusion of that lawsuit, they brought suit against their attorney about whether those accounts should have been placed in escrow. *Id*. The Suttons brought claims for fraud, breach of contract, and negligence/willful breach of trust. *Id*. The parties entered into a stipulation of discontinuance in December 2011. ECF 213-2.

### 4. *Elhannon, LLC v. Brenda J. DeLuca Trust*

In 2005, Elhannon entered into a contract to perform landscaping services for the Brenda J. DeLuca Trust. *Elhannon, LLC v. Brenda J. DeLuca Trust*, 108 A.D.3d 911, 911 (2013). Disputes arose between the parties "regarding payment and other issues." *Id.* The parties both accused each other of breach of contract and Elhannon brought a lawsuit in October 2011 alleging fraudulent inducement. *Id*. The suit was found to be untimely and the underlying merits of the claims were never addressed. *Id*.

5. *J. Frank Schmidt & Son Co. v. Elhannon Wholesale Nursery, Inc. and D. James Sutton*

This case ("the *Schmidt* case") began in 2014 when a tree vendor sued Elhannon for non-payment of an invoice. Elhannon had ordered nursery stock from Schmidt and Schmidt claimed it was still owed $48,763. ECF 161-4. Elhannon contends that while they received the shipments of nursery stock, a significant portion was defective. ECF 172 at 7. Elhannon brought several counterclaims against Schmidt for including breach of implied warranty, and breach of express warranty. *Id*. The lawsuit resulted in a confidential settlement.

6. *Donald J. Sutton and Ruth H. Sutton v. Warwick Valley School District et al.*

In this action, Sutton and his wife alleged improper diversion of trust fund monies relating to a landscaping project performed by Mr. Sutton's subrogor for Warwick Valley School District. ECF 161-8. Mr. Sutton brought claims for diversion of trust fund monies, perjury, and fraud and intentional misrepresentation against Warwick Valley School District and several people affiliated with the school district. *Id*.

7. *Elhannon Wholesale Nurseries, LLC, D. James Sutton and Ruth Sutton v. Jerome Construction, Inc., James Jerome, and Felicity Harrington Purzycki*

Elhannon brought this suit in 2016 alleging that James Jerome and his company entered into a purchase agreement for the purchase of trees and consulting services from Elhannon. First

5

Amended Complaint, *Elhannon Wholesale Nurseries, LLC, D. James Sutton and Ruth Sutton v. Jerome Construction, Inc., James Jerome, and Felicity Harrington Purzycki*, No. 5:15-cv-00257-gwc (D. Vt. Mar. 16, 2016), ECF No. 6. Elhannon claims that neither Jerome nor his company paid but instead provided construction work at defendant Purzycki's private property, without Elhannon's knowledge or approval. *Id*. Elhannon brought claims for theft/conversion, unjust enrichment, fraud, and breach of contract. *Id*. This case is currently pending.

## Discussion

Defendant's motion argues that evidence of all the Other Sutton Fraud Claims is admissible for the purpose of determining Sutton's credibility. They also argue that evidence of the *Schmidt* case is admissible for proving a common scheme and alternative causation.

Defendant's motion implicates two Federal Rules of Evidence: 404(b) and 403. Rule 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b). However, such evidence may be admitted for other purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. Rule 403 provides that "[t]he court may

6

exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

### A. Evidence of Other Sutton Fraud Claims is Inadmissible Under 404(b)

Defendant asserts that evidence concerning the Other Sutton Fraud Claims is admissible to challenge the credibility of Plaintiffs' current fraud allegations. ECF No. 161 at 1. Plaintiffs argue these claims are being offered as improper character evidence. ECF No. 172 at 4.

The varied nature of these claims (which range from a personal dispute between Sutton, his wife, and their attorney to allegations of check fraud within Elhannon brought to Sutton's attention by a former employee to claims of improper use of trust monies) seems to speak less to Sutton's credibility in this particular case than to his litigious nature. As the Second Circuit noted in *Outley v. City of New York*, "[l]itigiousness is the sort of character trait with which Rule 404(b) is concerned." *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988).

Bartlett acknowledges that a limiting instruction concerning the purpose of this evidence would be appropriate.

7

However, even with an instruction limiting the use of these allegations to the issue of Sutton's credibility rather than his propensity for litigation, the Court believes there is a great risk of unfair prejudice in this case.

### B. Evidence of Other Sutton Fraud Claims is Inadmissible Under 403

To exclude evidence under Rule 403, the Court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. Here, the acute risk of unfair prejudice substantially outweighs any probative value.

First, given the disparate nature of many of these claims, admitting them all into evidence would have little probative value. As mentioned above, the Other Sutton Fraud Claims encompass a variety of different situations and actors. While all of these claims involve some sort of allegation of fraud or misrepresentation, the facts, circumstances, and specific allegations are all disparate. The large differences between the claims lowers their probative value. *See Kramas v. Security Gas & Oil Inc.*, 672 F.2d 766 (9th Cir. 1982) ("In this instance the probative value of the evidence was limited [because] it related to different transactions and alleged misrepresentations of a different kind.").

Second, admitting these claims would entail a high risk that the jury would be biased against Sutton as a "chronic litigant." *Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34 (2d Cir. 1985) (finding that "litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant.").

Defendant also argues that these prior claims are admissible on the theory that they were fabricated. ECF No. 161 at 9. Defendant alleges that their similarity and number give rise to an inference of fraud, while Plaintiffs assert that the standard for proving fraud is higher. ECF No. 161 at 9, ECF No. 172 at 7-9. None of these claims have definitively been found fraudulent. Introducing these claims, and asking the jury to weigh the credibility and legitimacy of each, would create the type of juror confusion and distraction which Rule 403 intended to avoid. Allowing in these claims and having the jurors evaluate their merits would create multiple mini-trials within the instant litigation.

### C. Evidence of the *Schmidt* Case is Inadmissible to Show a Common Scheme or Alternative Causation

Defendant also argues that the *Schmidt* case is admissible to show Sutton's "common scheme of alleging fraud in order to avoid his financial obligations." ECF 161 at 11.

While the *Schmidt* case may be the most factually similar of the Other Sutton Fraud Claims, it is not "essentially identical." ECF 177 at 10. Their general similarities, that Elhannon and another business got into a dispute over payment and that at some point Elhannon brought a claim relating to fraud, are not enough to evince a common scheme.

Indeed, the cases Bartlett cites for support of this proposition seem to demand a higher standard. In *Onions Etc., Inc. v. Z&S Fresh, Inc.*, 1:09-cv-009060AWI-MJS, 2015 WL 9319427 (E.D. Cal. Dec. 23, 2015), defendants alleged that they were falsely told by a bank that a certain loan document "would only change the name" of an entity and not extend liability to their personal assets. *Onions Etc., Inc. v. Z&S Fresh, Inc.*, 1:09-cv-009060AWI-MJS, 2015 WL 9319427, at *1 (E.D. Cal. Dec. 23, 2015). During the course of a previous litigation, the same party claimed they were told by different representatives at a different bank that "the new loan documents were only name change documents" and that none of their personal assets were at risk. *Id*. Despite the fact that "[c]ourts generally disfavor evidence that a party has alleged vaguely similar claims in multiple lawsuits," the court allowed this evidence in because it was "so unusual" and "so identical." *Id*. at *3. Here, different claims of misrepresentation in payment disputes are

not "so unusual" and "so identical" as to evince a common scheme.

Additionally, this evidence would be inadmissible under Rule 403 for the reasons described above.

Lastly, evidence of the *Schmidt* case is not admissible to show alternative causation: In the *Schmidt* case, Elhannon alleged that the trees supplied by Schmidt were defective and not saleable, not that Schmidt's actions had affected trees already at the nursery. Thus, it does not support Bartlett's alternative causation argument concerning the trees at issue in this case.

## Conclusion

For the reasons set forth above, Defendant's motion *in limine* is **denied**.

DATED at Burlington, in the District of Vermont, this 19th day of November, 2018.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
