UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ELHANNON LLC, et al. | : |
| | : |
|     Plaintiffs, | : |
| | : |
|         v. | :   Case No. 2:14-cv-262 |
| | : |
| THE F.A. BARTLETT TREE EXPERT | : |
| COMPANY, | : |
| | : |
|     Defendant. | : |

## OPINION AND ORDER

Now before the Court is Defendant's motion *in limine* to exclude Plaintiff from introducing evidence of Defendant's alleged use of an "illegal" or "banned" chemical on Plaintiff's tree nursery property. Defendant asserts that such evidence is inadmissible under Federal Rules of Evidence ("FRE") 401 and 403 because it is irrelevant, highly inflammatory and prejudicial, and likely to cause jury confusion. For the reasons set forth below, Defendant's motion is **denied in part and granted in part**.

## Background

This case arose from a contract and fraud dispute between Plaintiffs Elhannon Wholesale Nurseries, LLC; Elhannon Wholesale Nurseries, LLC; and Elhannon Wholesale Nurseries, Inc. (collectively "Elhannon") and Defendant F.A. Bartlett Tree Expert Company ("Bartlett"). Bartlett originally filed an action in small claims court and Elhannon subsequently filed this case.

Elhannon's principal allegation is that Bartlett failed to perform under a series of contracts entered into between Elhannon and Bartlett, for Bartlett to design and implement a pest management program for Elhannon's entire tree nursery. Elhannon alleges that Bartlett employees underserviced the nursery, leading to a large scale outbreak of disease and insects on its trees; that Bartlett applied chemicals that were not approved for use in Elhannon's nursery in order to attempt to control an incipient outbreak; and that Bartlett falsified its records to give the impression that it was doing more work at Elhannon than it actually performed.

This motion concerns the use of the Xytect 2F imidacloprid insecticide by Bartlett at Elhannon's tree nursery. The label for this insecticide lists the active ingredient as "Imidacloprid, 1-[(6-Chloro-3-pyridinyl)methyl)-N-nitro-2-imidazolidinimine . . . 21.4%"; with the remaining 78.6% consisting of "other ingredients." ECF 214-2 at 2. The label also says that this insecticide is "not for use at . . . nurseries," and that "[i]t is a violation of Federal law to use this product in a manner inconsistent with its labeling." ECF No. 214-4 at 4. Other insecticides, not marketed under the Xytect 2F brand name, with identical chemical compositions are authorized for use at nurseries in New York, and have been as early as May 2010. ECF 214-2 at 3.

2

On the back side of the contracts between the parties, it states: "Bartlett Tree Experts will be responsible for the proper application of any spray formulation that is commonly used in the business." ECF No. 218-4 at 3.

Xytect 2F was sprayed at Elhannon's nursery on at least three different occasions. The first known application occurred in 2011, when Xytect 2F was sprayed on 109 copper beach trees. ECF 214-1 at 6. Elhannon's principal, D. James Sutton, testified at his deposition that of the 109 "severely infested" trees that were sprayed with Xytect 2F on this occasion, only 17 were "lost." ECF 214-1 at 8. Sutton remarked "Imidacloprid works. Don't get me wrong." *Id*. The second known spraying of Xytect 2F happened in May 2013. Xytect 2F was applied to an unspecified number of "[b]ig oaks . . . covered in scale." *Id*. at 9. Sutton testified that Xytect 2F had been effective in ridding the trees of scale in this instance. *Id*. The third application of Xytect 2F had been on a block of red maple trees in September 2013 and this application was also successful in ridding the trees of infection. *Id*. at 11.

Sutton has also testified that Elhannon, at that point in time, had not "suffered harm because of Bartlett's use of banned or elicit[sic] chemicals." ECF 214-1 at 4. However, a former Bartlett employee, Jason Graham, who had completed work at Elhannon on behalf of Bartlett, testified at his deposition that

3

selling trees containing banned chemicals could possibly create liability for Elhannon. ECF No. 223-1 at 6-7. Graham also testified that he was ordered to use Xytect 2F at Elhannon because Bartlett management knew that their other sprays were not working. ECF No. 223-1 at 188-89.

Elhannon's Amended Complaint makes multiple mentions of Bartlett's use of "illegal chemicals," "banned chemicals," and "illegal spraying" at the Elhannon nursery. ECF 27 at ¶¶ 37, 49, 51, 53, 68, 77, 97, 100, 123, 130, 132, and 133. The Amended Complaint alleges that these "illegal" applications of the "banned" chemical, imidacloprid, support its claims of Fraud in the Performance, Breach of Contract, and Negligence.

Bartlett has also mentioned these applications in its court documents. In its July 24, 2017 Supplemental Responses to Plaintiff's Requests for Admission, Bartlett admitted that during the course of Bartlett's work at Elhannon, Bartlett made "illegal sprays, drenches, or applications of chemicals at the Nursery." ECF No. 137-4 at 11.

## Discussion

**A. Admissibility Under Federal Rule of Evidence 401**

Under Federal Rule of Evidence ("FRE") 401, "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. "[T]he definition of relevance under Fed. R. Evid.

4

401 is very broad." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014).

Bartlett argues that evidence of the application of Xytect 2F is irrelevant under FRE 401 because "Elhannon has conceded that it has not suffered harm because of Bartlett's use" of imidacloprid. ECF 214 at 4.

Elhannon contends that evidence of the Xytect 2F sprayings is "material, relevant, and probative under" FRE 401. ECF No. 223 at 7. Elhannon asserts that the evidence is relevant to both liability and damages. For liability, Elhannon claims that Bartlett's use of this insecticide is highly probative not only to show breach of contract, but also to show that Bartlett knew it was in breach of contract. According to Elhannon, Bartlett used this insecticide "in a desperate attempt to cover for its failure in controlling pests under the IPM contracts they had sold to Elhannon." ECF 223 at 1. Former Bartlett employee Jason Graham testified that he was ordered to use Xytect 2F at Elhannon because Bartlett management knew that their other sprays were not working. ECF No. 223-1 at 188-89, 223-2 at 15-16.

Elhannon also argues that evidence of these sprayings is relevant to damages: "For liability reasons, Elhannon self-reported to the New York [Department of Environmental Conservation ("DEC")] that illegal chemicals had been used on

5

its property, and its understanding is that the DEC's investigation is still ongoing. It is not clear whether Elhannon is free from regulatory liability in New York." ECF 223 at 6. However, Bartlett contends that this assertion is merely speculative and contradicts the deposition testimony of Sutton. ECF No. 229 at 5-6.

Given the broad mandate of FRE 401, this evidence is probative. Bartlett's own contracts stated that it would be responsible for "the proper application of any spray formulation that is commonly used in the business." ECF No. 218-4, ECF 223 at 3-4. Using an insecticide that has not been approved for use at commercial nurseries is certainly relevant to this point. Additionally, Bartlett's spraying of Xytect 2F indicates that Bartlett knew the other sprays were not working. Accordingly, evidence of the Xytect 2F applications is relevant under FRE 401.

**B. Admissibility Under Federal Rule of Evidence 403**

Under Federal Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. "Application of this Rule requires a balancing analysis, and the trial judge has broad discretion to weigh the probative value of the evidence against the negative factors." *Li v. Canarozzi*, 142

F.3d 83, 88 (2d Cir. 1998). "In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *S.E.C. v. McGinnis*, No. 5:14-CV-6, 2015 WL 5643186, at *14 (D. Vt. Sept. 23, 2015) (quoting *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980)).

Bartlett argues that evidence of the use of imidacloprid would be prejudicial and inflammatory: "[i]n the popular imagination, a 'banned' or 'illegal' chemical is a harmful one. But by Elhannon's own admission, this chemical has not caused harm, and, conversely, it has been effective." ECF 214 at 5. Thus, because of its "undue tendency to suggest a decision on an improper basis," this evidence should be excluded. *Id.* (quoting *Preda v. Catch Ball Prod. Corp.*, 162 F.3d 1148 (2d Cir. 1998)). According to Bartlett, evidence of these applications would also cause jury confusion, because "the only 'illegality' was that the brand of imidacloprid used by Bartlett – Xytect 2F – was not authorized for nursery use in New York State." ECF No. 214 at 7. The unauthorized used in question "concerns a labeling or branding issue, and not a public-health concern based on the chemical properties of the insecticide." *Id.*

Elhannon asserts that Bartlett has not fairly assessed the probative value of the evidence at issue and that the probative value of this evidence is not outweighed by dangers of prejudice

7

and confusion. ECF 223 at 7. Elhannon points to *A.I.A. Holdings, S.A. v. Lehman Bros.*, No 97 Civ. 4978 (LMM), 2002 WL 31655287 (S.D.N.Y. Nov. 21, 2002). The court in *A.I.A. Holdings* denied a motion to exclude the term "rat trading" from use at trial, because the defendant himself used the term to describe his activities. Here, Elhannon observes that Bartlett had used and adopted these terms "for three years. It is only now, on the eve of trial, that Bartlett is running away from these terms." ECF No. 223 at 8.

Bartlett suggests a compromise: if Elhannon is allowed to refer to Bartlett's application of imidacloprid during trial, they should not be allowed to label the chemical "banned" or "illegal," but rather say that Bartlett "used a brand of imidacloprid not registered for use on nurseries in New York State." ECF 214 at 6.

This language is an appropriate resolution. It allows Elhannon to bring in relevant evidence but wards off the possibility of unfair prejudice. It gives a more accurate picture of the legal state of imidacloprid, which was legal for use in nurseries under some brand names but not others. Referring to Xytect 2F as "banned" or "illegal" would create an unfair prejudicial effect that would substantially outweigh the evidence's probative value. Thus, the Court will allow Elhannon to bring in evidence of applications of Xytect 2F, but will not

allow Elhannon to refer to the insecticide as "banned" or "illegal." Elhannon may explain that the brand name of insecticide used was not registered for use in nurseries in New York State.

## Conclusion

For the reasons set forth above, Defendant's motion *in limine* is **denied in part and granted in part**.

DATED at Burlington, in the District of Vermont, this 19th day of November, 2018.

/s/ William K. Sessions III  
William K. Sessions III  
District Court Judge